Filed 1/23/23 P. v. Smith CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>JOSE CARL SMITH,<br><br>     Defendant and Appellant. | C095199<br><br>(Super. Ct. No. 19FE017054)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>[CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed in this case on January 13, 2023, be modified as follows:

1.     On page 5, after the header "DISCUSSION," add as footnote 2 the following footnote, which will require renumbering of all subsequent footnotes:

**2**Although not raised or mentioned in defendant's opening or reply briefs, the People note the trial court erroneously imposed a four-month sentence

enhancement under section 12022, subdivision (a)(1) as to count 32 at sentencing, despite the fact that the enhancement was dismissed shortly before trial. We agree this sentence was unauthorized and will strike the enhancement accordingly. (*People v. Scott* (1994) 9 Cal.4th 331, 354.)

2.      On page 14, the disposition is replaced in its entirety with the following:

The four-month sentence imposed as to the dismissed firearm enhancement under section 12022, subdivision (a)(1) on count 32 is stricken. The trial court is directed to prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

This modification changes the judgment.

Defendant's petition for rehearing is denied.

BY THE COURT:


/s/
Robie, Acting P. J.


/s/
Hull, J

For the reasons stated in my dissent, I continue to disagree with the disposition as modified and would grant the petition for rehearing.


 /s/
_____

Duarte, J.

Filed 1/13/23  P. v. Smith CA3 (unmodified opinion)

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C095199 |
| Plaintiff and Respondent, | (Super. Ct. No. 19FE017054) |
| v. | |
| JOSE CARL SMITH, | |
| Defendant and Appellant. | |

A jury found defendant Jose Carl Smith guilty of, among other offenses, 18 counts of first degree burglary and one robbery count.  The trial court sentenced defendant applying the upper term for the robbery count and separate terms for each of the burglary counts.  On appeal, defendant argues:  (1) the trial court's imposition of the upper term sentence is no longer valid in light of the changes made to Penal Code[1] section 1170 by

---

[1]     Further undesignated statutory references are to the Penal Code.

1

Senate Bill No. 567 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 731, § 1.3); (2) the trial court should have stayed the sentences related to five of the burglary counts under section 654; and (3) the trial court erred when it denied defendant's motion under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 to strike a prior conviction. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

The prosecution charged defendant with 18 counts of first degree burglary, along with two counts of attempted robbery, and one count each of robbery, assault with force likely to produce great bodily injury, child endangerment, evading the police, possession of a firearm by a convicted felon, and possession of ammunition by a convicted felon. The prosecution also alleged defendant had a prior strike conviction for burglary from 2004.

At trial, the prosecution introduced evidence in the form of surveillance videos from neighboring homes and data obtained from defendant's cell phone to establish the sequence of events. As relevant to the issues in this appeal, there was evidence concerning the burglary of two homes, one occupied by victim J.B. and the other by victim V.M.

Defendant burglarized J.B.'s house on February 8 and 10, 2019. Global positioning system (GPS) data indicated defendant's cell phone was near the house on the evening of February 8, 2019. Defendant texted a codefendant about items stolen from J.B.'s house shortly thereafter. On February 9, 2019, GPS data again located defendant's cell phone near J.B.'s house, but no entry into the house was alleged. After midnight on February 10, 2019, defendant texted a codefendant with the address of J.B.'s house. GPS data from defendant's cell phone indicated the phone was moving toward J.B.'s house around that time. The cell phone stayed in the area for over an hour, then moved away. Police later recovered photographs from defendant's cell phone of J.B.'s house and items stolen from J.B.'s house.

V.M. testified he left his house at 6:00 a.m. on April 2, 2019, and returned the next evening at 6:00 p.m. on April 3, 2019. When he returned, he found that someone had broken into his house through a bedroom window and stolen, among other things, approximately 50 firearms, 15,000 rounds of ammunition, jewelry, and 147 pounds of boar meat.

Surveillance cameras from neighboring houses captured the burglary of V.M.'s house. There were four separate entries into the house. On April 2, 2019, codefendant Stephan Gee pulled up to V.M.'s house. Gee walked from V.M.'s house carrying an item, placed it in his car, and drove away after talking on his cell phone at approximately 12:17 p.m. Contemporaneous cell phone records showed Gee texted a picture of one of V.M.'s firearms to another codefendant at 12:51 p.m. The two also conducted a conversation about selling the firearm in the picture. Defendant participated in several of the conversations. At 1:14 p.m., text messages between defendant and a codefendant included the address of V.M.'s house.

At 2:04 p.m., defendant's van arrived at V.M's house. GPS data indicated defendant's cell phone was at V.M.'s house, although no video captured defendant entering the house. At 7:24 p.m., a codefendant texted defendant asking if he was "going back to see if [it was] still empty"; defendant responded affirmatively. The van returned around 10:00 p.m., although no entries were made into the house at that time. At approximately 11:21 p.m., GPS data located defendant's cell phone at a codefendant's address. Defendant's van returned to V.M.'s house around 1:15 a.m. on April 3, 2019, the time of defendant's second entry into the house; GPS data around that time indicated defendant's cell phone was at the house. The vehicle then left the house. Around that time, defendant took a picture of V.M.'s gun safe, and sent a text message saying that "there [was] no way to get it out." GPS data located defendant's cell phone at his codefendant's address at 5:03 a.m.

Surveillance photos showed a third entry by defendant at approximately 5:51 a.m. GPS data showed defendant's cell phone was near V.M.'s house at 5:53 a.m. Defendant's van left around 6:20 a.m. Over the following weeks, defendant texted photographs of firearms taken from V.M.'s house, along with discussions about selling the guns in the photographs. There were also photographs on his cell phone showing stolen items in the back of his van.

The jury ultimately found defendant guilty of all charges, except the assault charge, which was dismissed. The trial court found true the allegation that defendant had been convicted in 2004 for burglary, which constituted a prior strike. In evaluating the allegation, the court considered a prior conviction packet submitted by the prosecution, which included the complaint for the 2004 charges; minute orders showing a no contest plea, subsequent conviction, and probation order; and a minute order showing the premature termination of that probation in 2007.

Defendant filed a motion to strike the prior strike under section 1385. At the November 5, 2021 sentencing hearing, defense counsel argued the 2004 conviction was dated and a sentence without the strike would be adequate to serve justice. The trial court noted defendant had three felony convictions following the prior strike, for five total other felony convictions, and noted the high number of convictions in the current case. The court denied the motion, stating defendant "falls precisely within the sentencing structure for repeat offenders that three strikes laws were created to address." The court acknowledged defense counsel's argument about the total sentence involved, but explained that "this is what [the] three strikes law is about."

As to defendant's overall sentence, defense counsel argued section 654 applied to counts 25, 26, and 27, which concerned the burglaries of V.M.'s house, and separately to counts 11 and 12, which concerned the burglaries of J.B.'s house. Defendant argues the burglaries of V.M.'s house and J.B.'s house were each a continuous course of conduct. The trial court stated each of the counts was a separate burglary because this was not a

4

case where defendant "went in and out of the victim's house just because it took multiple trips to get the goods"; rather, defendant was "leaving and coming back at a later time to go get more stuff" from each house.

The trial court noted the Legislature had been revisiting criminal sentencing law and that future legislative enactments could affect the length of defendant's sentence. Considering the potential aggravating factors that could be considered to impose the upper term, the court stated defendant's prior convictions were "both numerous and of increasing seriousness." The court further stated that there were no mitigating factors for the case. The court concluded, "[T]he combination of the specifics of the crime and what you brought to the crime in terms of your history of criminality result in the Court's conclusion that the only factors that are at play here are aggravating factors. They are worsening factors in terms of imposing a sentence, and, therefore, they call for the upper term." The court imposed a total aggregate sentence of 67 years 8 months, including the upper term of nine years for the robbery count. The court declined to stay any of the three counts related to the V.M. burglary or the two counts related to the J.B. burglary under section 654.

DISCUSSION

I

*Senate Bill No. 567*

The parties agree Senate Bill No. 567 (2021-2022 Reg. Sess.) applies retroactively to defendant because defendant's judgment was not final on January 1, 2022, when Senate Bill No. 567 became effective. (See § 1170, subd. (b), as amended by Stats. 2021, ch. 731, § 1.3.) Defendant contends the matter must be remanded for resentencing because the aggravating circumstances relied on by the trial court when imposing the upper term were not stipulated to by defendant, found true by a jury beyond a reasonable doubt, or contained in a certified record of conviction. We agree Senate Bill No. 567 applies retroactively but find remand unnecessary.

5

A

*Senate Bill No. 567 Applies Retroactively*

Senate Bill No. 567 (2021-2022 Reg. Sess.) amended section 1170, subdivision (b) to provide that the trial court may impose the upper term only if the facts underlying the aggravating circumstances "have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2), as amended by Stats. 2021, ch. 731, § 1.3.) Under amended section 1170, subdivision (b)(3), a trial court "may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury."

Under *In re Estrada* (1965) 63 Cal.2d 740, an ameliorative change in law applies retroactively to nonfinal judgments in the absence of an express statement to the contrary by the Legislature. (*People v. Francis* (1969) 71 Cal.2d 66, 75-76.) A judgment becomes final when it has reached final disposition in the highest court authorized to review it. (*People v. Rossi* (1976) 18 Cal.3d 295, 304.) Here, defendant's judgment is not yet final, nor did the Legislature expressly prohibit the retroactive application of the bill. Thus, Senate Bill No. 567 applies retroactively to defendant's case.

B

*Remand Is Unnecessary*

The People contend remand is unnecessary because the trial court relied on defendant's prior criminal history to impose the upper term. The People also contend any error in failing to apply Senate Bill No. 567 was harmless because on remand the aggravating factors will clearly be found true beyond a reasonable doubt. We agree.

When speaking of the trial court's discretion to impose the upper term, section 1170, subdivision (b)(1) through (3), as amended by Senate Bill No. 567 (2021-2022 Reg. Sess.), provides the court may impose the upper term "only when there are circumstances in aggravation of the crime that justify the imposition of a term of

6

imprisonment exceeding the middle term."**2** By its plain meaning, the provision does not provide for a presumption that a trial court must exercise its discretion in a certain way. Instead, the Legislature created a rule *limiting* a trial court's discretion to impose the upper term in cases where no aggravating factor has been proven beyond a reasonable doubt or otherwise stipulated to by the defendant.

Because subdivision (b)(1) through (3) of section 1170 is silent regarding the court's discretion, the newly-enacted provision leaves unchanged a trial court's discretion to impose the upper term of imprisonment based on a single aggravating factor (see *People v. Nicolas* (2017) 8 Cal.App.5th 1165, 1182; *People v. Osband* (1996) 13 Cal.4th 622, 728 ["[o]nly a single aggravating factor is required to impose the upper term"]) and the sentence it believes to be appropriate to the case and the defendant being sentenced before it (see *People v. Castaneda* (1999) 75 Cal.App.4th 611, 614 ["A judge's subjective determination of the value of a case and the appropriate aggregate sentence, based on the judge's experiences with prior cases and the record in the defendant's case, cannot be ignored. A judge's subjective belief regarding the length of the sentence to be imposed is not improper as long as it is channeled by the guided discretion outlined in the myriad of statutory sentencing criteria"]).

---

**2** Section 1170, subdivision (b)(1) through (3) provides: "(b)(1) When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2). [¶] (2) The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial. . . . [¶] (3) Notwithstanding paragraphs (1) and (2), the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury. This paragraph does not apply to enhancements imposed on prior convictions."

The trial court cited the numerosity and increasing seriousness of defendant's prior convictions as the primary circumstance in aggravation and found no mitigating factors. Defendant's prior strike conviction and the later termination of his probation were supported by certified records of his conviction, which the trial court considered when it found true the allegation that defendant had a prior strike conviction. Because the error is purely one of state law, the harmless error test in *People v. Watson* (1956) 46 Cal.2d 818, 836 applies. (*People v. Epps* (2001) 25 Cal.4th 19, 29.) Thus, if a reviewing court concludes it is reasonably probable, beyond a reasonable doubt, that a jury, applying the beyond-a-reasonable-doubt standard, would have found true the aggravating circumstances relied on by the trial court, the error is harmless. (See *People v. Sandoval* (2007) 41 Cal.4th 825, 839 ["if a reviewing court concludes, beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true at least a single aggravating circumstance had it been submitted to the jury, the Sixth Amendment error properly may be found harmless"].)

Here, the trial court believed defendant's case was an upper term case. The court focused primarily on the number and increasing seriousness of defendant's prior convictions, although it briefly mentioned the "specifics of the crime" as well. Given the vague and subjective nature of the "specifics of the crime," we cannot say a jury would have found that circumstance true beyond a reasonable doubt. (See *People v. Sandoval*, *supra*, 41 Cal.4th at pp. 839-840 ["to the extent a potential aggravating circumstance at issue in a particular case rests on a somewhat vague or subjective standard, it may be difficult for a reviewing court to conclude with confidence that, had the issue been submitted to the jury, the jury would have assessed the facts in the same manner as did the trial court"].)

The trial court's sentencing decision, however, focused predominantly on defendant's numerous prior convictions. The fact of defendant's prior convictions and prior unsatisfactory performance on probation were readily discernible in part from the

8

certified records that the prosecution offered into evidence at sentencing, but also from the presentence report prepared by probation. While the report was not a certified record, defendant had every opportunity and incentive to object to the trial court's reliance on those facts had the facts been incorrectly portrayed. Defendant's prior convictions and unsatisfactory performance during probation are readily ascertainable from certified records and would be found true beyond a reasonable doubt by a trial court or jury. Given the true findings that will undoubtedly be found upon remand, it is clear the trial court would impose the same sentence utilizing the same justification it already did. For these reasons, remand is unnecessary.

## II

### *Section 654*

Defendant first argues the trial court erred in refusing to apply section 654 as to counts 25, 26, and 27, which all relate to the burglary of V.M.'s house, and counts 11 and 12, which relate to the burglary of J.B.'s house.[3] In defendant's view, each house only involved one objective, and thus the trial court could not have imposed multiple punishments as to the counts for each house. We disagree.

Section 654 prohibits separate punishment for multiple offenses arising from the same act or from a series of acts constituting an indivisible course of criminal conduct. (*People v. Williams* (2013) 57 Cal.4th 776, 781.) " 'Whether *a course of criminal conduct* is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the *intent and objective* of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' " (*People v. Rodriguez* (2009) 47 Cal.4th 501, 507.) Where

---

[3] Defendant's briefing treats the section 654 issues with respect to J.B.'s house and V.M.'s house as two distinct issues. Because the issues present similar legal questions, we will address them together in a single section.

9

section 654 applies, "the trial court must impose a full term and stay execution of that term." (*People v. Relkin* (2016) 6 Cal.App.5th 1188, 1198.)

However, "a course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment." (*People v. Beamon* (1973) 8 Cal.3d 625, 639, fn. 11; accord, *People v. Goode* (2015) 243 Cal.App.4th 484, 492.) "Thus, a finding that multiple offenses were aimed at one intent and objective does not necessarily mean that they constituted 'one indivisible course of conduct' for purposes of section 654. If the offenses were committed on different occasions, they may be punished separately." (*People v. Kwok* (1998) 63 Cal.App.4th 1236, 1253; see *id.* at p. 1257 [§ 654 did not apply to multiple burglaries of the same residence where the defendant "entered the house on two separate occasions nine days apart"]; *In re William S.* (1989) 208 Cal.App.3d 313, 317-318 [§ 654 did not apply to the defendant who burglarized the residence and left with several items, then several hours later returned to the same residence "inspired by a desire to purloin additional loot"].) "If the separation in time afforded [the] defendant[] an opportunity to reflect and to renew [his, her, or] their intent before committing the next crime, a new and separate crime is committed." (*People v. Louie* (2012) 203 Cal.App.4th 388, 399.)

" 'The question of whether section 654 is factually applicable to a given series of offenses is for the trial court, and the law gives the trial court broad latitude in making this determination.' [Citation.] . . . This requires us to view the evidence in the light most favorable to the sentencing order and presume the existence of facts a trier of fact could reasonably deduce from the evidence." (*People v. Kopp* (2019) 38 Cal.App.5th 47, 91.) We will not disturb the trial court's findings if they are supported by substantial evidence. (*Id.* at p. 91.)

Here, the trial court made an explicit finding that section 654 did not apply to the burglaries of J.B.'s and V.M.'s houses because defendant was not merely going back and forth to the houses to load up his van, but rather was leaving to a place of safety, then

10

returning to each home later on to steal more items. As noted above, the trial court is correct that such a situation demonstrates multiple burglaries that are subject to multiple punishments, rather than a single extended burglary subject to only one punishment. (*In re William S.*, *supra*, 208 Cal.App.3d at pp. 317-318.)

Furthermore, the trial court's findings were supported by substantial evidence. Defendant burglarized J.B.'s home on two separate days, February 8 and 10, 2019. In both instances, he went to the home, stole items, then left. The separation in time for each burglary was more than sufficient for defendant to "reflect and renew" his intent to commit a burglary. Indeed, defendant even visited the home on the intervening day to further "scout" the location.

There was similar evidence as to the burglaries of V.M.'s house. Defendant first went to V.M.'s house around 2:00 p.m. on April 2, 2019. Several hours later, a codefendant asked him if he would be going back to the house to "see if [it was] still empty," implying defendant had taken items and then left. Early the next morning, defendant returned to the home, entered the home, and took a picture of V.M.'s gun safe. He then left, eventually ending up at a codefendant's address. He made his third visit to the house later that morning. It is a reasonable inference that defendant had separate intents and objectives in each instance; rather than just stealing "whatever they could," as defendant contends, defendant was looking for additional items to take and determining how to steal larger or more cumbersome items, such as V.M.'s gun safe, on his later visits. And, in any case, the burglaries were divisible in time and thus constituted separate violations. We conclude the trial court's findings were supported by substantial evidence and section 654 does not apply here.

III

Romero *Motion*

Defendant contends the trial court erred in denying his *Romero* motion. We disagree.

Section 1385, subdivision (a) gives the trial court authority, on its own motion or upon application of the prosecution, "and in furtherance of justice," to order an action dismissed. In *Romero*, our Supreme Court held that a trial court may utilize section 1385 to strike or dismiss a prior strike for purposes of sentencing under the three strikes law. (*People v. Romero*, *supra*, 13 Cal.4th at p. 504.) A trial court's ruling denying a request to dismiss a prior strike allegation "is subject to review under the deferential abuse of discretion standard." (*People v. Carmony* (2004) 33 Cal.4th 367, 374 (*Carmony*).)

"In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citations.] Second, a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citations.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Carmony*, *supra*, 33 Cal.4th at pp. 376-377.)

In *Carmony*, our Supreme Court explained: " '[T]he Three Strikes law does not offer a discretionary sentencing choice, as do other sentencing laws, but establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court "conclud[es] that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme." ' " (*Carmony*, *supra*, 33 Cal.4th at p. 377.) The circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be extraordinary. (*Id*. at p. 378.) Reversal is justified where the trial

12

court was unaware of its discretion to dismiss a prior strike or considered impermissible factors in declining to dismiss. (*Ibid*.) But where the trial court, aware of its discretion, " 'balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance.' " (*Ibid*.)

We find no abuse of discretion here. The trial court was aware of its discretion, considered the relevant factors, and reached its decision in conformity with the spirit of the three strikes law. Each of the factors raised by defendant, including the total duration of his sentence, defendant's other convictions, and the current offenses in the context of the overall statutory scheme, was considered by the trial court. Unlike other cases in which courts have found an exception to the three strikes scheme (see *People v. Avila* (2020) 57 Cal.App.5th 1134, 1145), defendant did not have a long crime-free period between his prior strike and the current offenses; defendant received intervening convictions in 2007 for transportation or sale of a controlled substance, 2009 for possession of a controlled substance, and 2011 for infliction of corporal injury on a dating partner, each of which resulted in a prison sentence. And, defendant's current offenses, which include multiple counts of burglary, robbery, and attempted robbery, were significantly worse than the defendant's in *Avila*. (*Id*. at p. 1142.) The court's decision was neither irrational nor arbitrary. Accordingly, we affirm. (Cf. *Carmony*, *supra*, 33 Cal.4th at pp. 377-378.)

## DISPOSITION

The judgment is affirmed.

/s/ _____
Robie, Acting P. J.

I concur:

/s/ _____
Hull, J.

DUARTE, J., dissenting.

I disagree with the majority's conclusion that remand is "unnecessary" in this case (maj. opn., *ante*, p. 6) despite the change in the applicable law. Because *none* of the aggravating factors relied upon by the trial court were stipulated to or found true by a jury beyond a reasonable doubt, as is now required under the amended statute at issue, I agree with defendant's claim that remand for resentencing is required.

Defendant was sentenced to the upper term for his crime without the benefit of Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill No. 567), which amended Penal Code section 1170, subdivision (b),[1] and provides that a trial court may impose an upper term sentence only where there are aggravating circumstances that justify the imposition of a term exceeding the middle term and the defendant has either stipulated to the facts underlying those circumstances or those facts have been found true beyond a reasonable doubt. (§ 1170, subd. (b)(1)-(2); Stats. 2021, ch. 731, § 1, eff. Jan. 1, 2022.) As noted by the majority, here the trial court's sentencing decision "focused primarily on the number and increasing seriousness of defendant's prior convictions" and also mentioned the "specifics of the crime." (Maj. opn., *ante*, p. 8.)

The only information provided by the prosecution as to any criminal history by defendant was the prior conviction packet for defendant's 2004 burglary conviction; the strike allegation based on that conviction was found true. No records were produced to show that defendant had suffered prior convictions that were "both numerous and of increasing seriousness," as found by the trial court. Nor did any proof beyond a reasonable doubt support that court's conclusion that: "[T]he combination of the specifics of the crime and what you brought to the crime in terms of your history of

---

[1] Undesignated statutory references are to the Penal Code.

1

criminality result in the Court's conclusion that the only factors that are at play here are aggravating factors."

The majority opines that "[t]he fact of defendant's prior convictions and prior unsatisfactory performance on probation were readily discernible in part from the certified records that the prosecution offered into evidence at sentencing, but also from the presentence report prepared by probation" (maj. opn., *ante*, pp. 8-9), but that observation is not relevant to the question of whether the requirements of the amended statute were satisfied. It is undisputed that the requirements were not met.

The majority agrees that the probation report is not a certified record, but writes of its contents that "defendant had every opportunity and incentive to object to the trial court's reliance on those facts had the facts been incorrectly portrayed." (Maj. opn., *ante*, p. 9.) But the majority does not explain how defendant's failure to explicitly dispute the report's accuracy excuses the error or renders it harmless. The doctrine of forfeiture has no relevance here, where the new requirements were imposed *after* sentencing. Defendant did not stipulate to the accuracy of the probation report or the information therein, and the requirement at issue--that the information in the report upon which the trial court relied must be proven by certified record or beyond a reasonable doubt--did not exist at the time of his sentencing.

Finally, I do not agree that we may simply speculate, as does the majority, that defendant's "prior convictions and unsatisfactory performance during probation are readily ascertainable from certified records and would be found true beyond a reasonable doubt by a trial court or jury." (Maj. opn., *ante*, p. 9.) The majority does not explain how it is permissible for us to presume the existence of extrarecord evidence--whether that evidence be certified copies of convictions showing both numerosity and an increase in seriousness, as found by the trial court here, or proof beyond a reasonable doubt of any of the other aggravating factors on which the trial court relied--and I do not agree we may properly do so. (See *People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1115, fn. 6 ["If the

2

record is insufficient to support a trial court's findings about a defendant's criminal history, we will not presume the existence of extrarecord materials, however likely they are to exist, to address this insufficiency"].) This broad and unsupported conclusion that required evidence is "readily ascertainable" such that the unproven factor "would be found true" undermines the specific language of Senate Bill No. 567 and amended sections 1170 and 1170.1, and signals that this type of noncompliance will always be harmless error.

For all of these reasons, I respectfully dissent from the majority's refusal to remand.


/s/_____
Duarte, J.

3